**UNITED STATES of America**

v.

**James Henry JOHNSON, Appellant.**

**No. 08–3693.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Oct. 29, 2009.

Filed Nov. 18, 2009.

Renee Pietropaolo, Office of Federal Public Defender, Pittsburgh, PA, for Appellant.

Robert L. Eberhardt, Rebecca R. Haywood, Laura S. Irwin, Office of the United

States Attorney, Pittsburgh, PA, for Appellee.

Before: SMITH, FISHER and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

James Henry Johnson pled guilty to one count of unlawful possession of a firearm by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). The United States Probation Office assigned Johnson a base offense level of 20 under the United States Sentencing Guidelines based on his 2002 conviction under the Pennsylvania simple assault statute ("PSAS"), 18 Pa. Cons.Stat. § 2701. Johnson challenged that calculation, arguing that his simple assault conviction did not constitute a "crime of violence" under the Guidelines. The District Court rejected that argument and sentenced Johnson to 77 months' imprisonment. Johnson appeals, arguing that the District Court's determination that his simple assault conviction is a crime of violence cannot be reconciled with the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008). For the reasons that follow, we will vacate Johnson's sentence and remand for resentencing.

## I.

The facts giving rise to this case are relatively straightforward. On November 1, 2006, Johnson was sitting in a car parked in a grocery store parking lot in Pittsburgh, Pennsylvania. Pittsburgh police officers received a tip regarding Johnson's whereabouts and arrested him pursuant to an outstanding warrant issued in connection with unrelated charges. Inside the car, the officers found a loaded firearm with an obliterated serial number. Thereafter, Johnson was charged in the Western District of Pennsylvania with one count of unlawful possession of a firearm by a person convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Johnson subsequently pled guilty to that charge.

Before sentencing, the Probation Office prepared a Presentence Report ("PSR"). Pursuant to U.S.S.G. § 2K2.1(a)(4)(A), the Probation Office calculated Johnson's base offense level as 20 based on his 2002 simple assault conviction in the Allegheny County Court of Common Pleas, which the Probation Office designated as a "crime of violence" pursuant to U.S.S.G. § 4B1.2(a)(2). After giving Johnson a four-level increase because the firearm he unlawfully possessed had an obliterated serial number, and a three-level decrease to reflect his acceptance of responsibility and his timely notification of his intention to plead guilty, the Probation Office calculated Johnson's total offense level as 21. The PSR also detailed Johnson's criminal history. It noted that Johnson had the following five prior convictions: a 2001 conviction for fleeing or attempting to elude a police officer, possession or distribution of marijuana, and a failure to yield to traffic signs; a 2002 simple assault conviction; a 2002 conviction for possession of a firearm without a license, unauthorized use of an automobile and other vehicles, and driving without a license; a 2002 conviction for possession of a firearm without a license and unauthorized use of an automobile; and a 2004 conviction for simple assault.[1] The Probation Office assigned Johnson a total of 11 criminal history

---

1. Johnson's 2004 simple assault conviction was for a misdemeanor of the third degree, punishable by not more than one year in prison. 18 Pa. Cons.Stat. 1104(3). Accordingly, it does not qualify as a crime of violence under U.S.S.G. § 2K2.1.

points to reflect these prior convictions. Three more points were added because Johnson's felon-in-possession conviction arose while he was on parole for a previous offense and within two years of his release from parole for another previous offense. Accordingly, Johnson was assigned a total of 14 criminal history points, resulting in a criminal history category of VI. Johnson's total offense level of 21 and criminal history category of VI resulted in an advisory Guidelines range of 77 to 96 months' imprisonment.[2]

At sentencing, Johnson objected to several aspects of the PSR. In pertinent part, Johnson objected to the application of U.S.S.G. § 2K2.1(a)(4)(A) in the calculation of his base offense level. He asserted that his 2002 simple assault conviction did not qualify as a "crime of violence" under U.S.S.G. § 4B1.2(a)(2) in light of *Begay*. He pointed out that count one of the criminal information in the simple assault case charged him with intentional, knowing and reckless conduct, and that, aside from the information, the government had introduced no other evidence on the basis of which to determine his particular *mens rea* when he committed that crime. Johnson contended that reckless conduct could never constitute a crime of violence in light of *Begay* because such conduct, by definition, is not purposeful. The government urged the District Court not to make a blanket ruling to that effect, and asked the Court to infer from the criminal information alone that Johnson's simple assault conviction evinced the sort of conduct that could be considered a violent crime under *Begay*. The government noted that while a sentencing court could consider the plea agreement and the plea colloquy, among other things, to determine a defendant's

actual *mens rea*, in Johnson's case the former was "not particularly helpful" and the latter was "not available[.]" (App. 100.) After hearing the parties' respective positions, the District Court ruled as follows:

I do not read or see Begay as broadly as the defense does. I do not believe that Begay instructs that this type of underlying offense can never be a crime of violence. A crime is violent if it presents a serious risk of injury to another person. In this case, Mr. Johnson's plea to simple assault demonstrates from the charging document and the statute itself that it presented a serious risk of injury to another person. And I do believe that it is similar in kind as well as in the degree of risk posed by the commission of other crimes. And it's similar in kind because it involves purposeful, violent and aggressive behavior. So, that is my ruling in this case. It would keep the offense level at a 21.

(App. 102–03.)

The District Court accepted the PSR's calculations and was unpersuaded by Johnson's other objections. The Court sentenced Johnson to 77 months' imprisonment and three years of supervised release.

This timely appeal followed. Johnson argues that: (1) his 2002 simple assault conviction is not a "crime of violence" under U.S.S.G. § 4B1.2(a)(2); (2) his sentence is procedurally unreasonable; and (3) his sentence is substantively unreasonable.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. This Court

---

**2.** Absent a finding that Johnson had a prior conviction constituting a crime of violence, Johnson's base offense level would have been 14 and his total offense level would have been 15, resulting in an advisory Guidelines range of 41 to 51 months.

has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We exercise plenary review over the legal question whether a particular crime constitutes a crime of violence. *United States v. McQuilkin,* 97 F.3d 723, 727 (3d Cir.1996). In interpreting the Guidelines, we look to their "plain and unambiguous language[,]" *United States v. Swan,* 275 F.3d 272, 279 (3d Cir.2002) (quotation marks and citation omitted), but commentary to the Guidelines "is authoritative unless it violates the Constitution or federal statute or is inconsistent with or is a plainly erroneous reading of that provision[.]" *United States v. Remoi,* 404 F.3d 789, 795 (3d Cir.2005) (per curiam) (citing *Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)). We review the District Court's sentence for reasonableness under the abuse-of-discretion standard. *See Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 594, 597, 169 L.Ed.2d 445 (2007); *United States v. Tomko,* 562 F.3d 558, 567 (3d Cir.2009) (en banc).

### III.

The Guidelines provide that a defendant's base offense level is 20 if the defendant "committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence[.]" U.S.S.G. § 2K2.1(a)(4)(A). The Guidelines define a "crime of violence" as

any offense . . . punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2(a) (emphasis supplied). The commentary to § 4B1.2 offers a list of crimes that constitute crimes of violence, including "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." U.S.S.G. § 4B1.2 cmt. 1. In this case, we consider only the portion of § 4B1.2(a)(2) italicized above, which we have referred to as the "residual clause." *United States v. Hopkins,* 577 F.3d 507, 510 (3d Cir.2009).[3]

In *United States v. Dorsey,* 174 F.3d 331 (3d Cir.1999), we held that a conviction under the PSAS is a crime of violence under § 4B1.1 of the Guidelines. *Id.* at 333. As both parties recognize, the analytical framework we employed in *Dorsey* has been altered by the Supreme Court's decision in *Begay.*[4] Post-*Begay,* to qualify as a crime of violence the crime in

---

**3.** The parties apparently agree that no other provision of U.S.S.G. § 4B1.2(a) reaches the PSAS, and their briefing is limited to the applicability *vel non* of the residual clause. In this opinion, we consider only the residual clause.

**4.** This circuit's Internal Operating Procedure 9.1 provides: "It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel. Court en banc reconsideration is required to do so." That rule notwithstanding,

"a panel of our Court may decline to follow a prior decision of our Court without the necessity of an en banc decision when the prior decision conflicts with a Supreme Court decision." *United States v. Tann,* 577 F.3d 533, 541 (3d Cir.2009) (citations omitted). *Dorsey,* issued many years before *Begay,* did not consider whether the crimes in the PSAS were similar both in kind and in degree of risk to the enumerated crimes, as required by *Begay.* Therefore, to the extent any portion of *Dorsey* conflicts with *Begay,* we are not bound by that portion of *Dorsey.*

question "must (1) present a serious potential risk of physical injury *and* (2) be 'roughly similar, in kind as well as degree of risk posed, to the examples [burglary, arson, extortion, or use of explosives] themselves.' " *United States v. Polk*, 577 F.3d 515, 518 (3d Cir.2009) (emphasis and alteration in original) (quoting *Begay*, 128 S.Ct. at 1585–86). A crime is similar in kind to one of the enumerated examples if it "typically involve[s] purposeful, violent, and aggressive conduct." *Begay*, 128 S.Ct. at 1586 (internal quotation marks and citations omitted).[5] "If the crime of conviction is materially different in terms of these characteristics, it does not come within the residua[l] clause." *Hopkins*, 577 F.3d at 514 (internal quotation marks omitted).

 We generally use a categorical approach to classify a prior conviction. *See Taylor v. United States*, 495 U.S. 575, 600–02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Under that approach, a court must ask "whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." *James v. United States*, 550 U.S. 192, 202, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (emphasis omitted). Where a statute criminalizes different kinds of conduct, some of which would constitute crimes of violence while others would not, a court may look beyond the statutory elements to determine the par-

ticular part of the statute of which the defendant was actually convicted. *See Evanson v. Attorney Gen. of the United States*, 550 F.3d 284, 290–91 (3d Cir.2008); *Singh v. Ashcroft*, 383 F.3d 144, 147–48 (3d Cir.2004); *see also United States v. Smith*, 544 F.3d 781, 786 (7th Cir.2008) ("Such an examination ... is '*only* to determine which part of the statute the defendant violated.' " (emphasis in original and other citation omitted) (quoting *United States v. Howell*, 531 F.3d 621, 623 (8th Cir.2008))). In conducting such an inquiry, a court is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). "This rule is not meant to circumvent the categorical approach by allowing courts to determine whether the actual conduct of the individual defendant constituted a purposeful, violent and aggressive act." *Smith*, 544 F.3d at 786 (citations omitted).

To determine categorically whether a conviction under the PSAS qualifies as a crime of violence, we begin with the statutory text. *See United States v. Siegel*, 477 F.3d 87, 91 (3d Cir.2007). However, under the categorical approach we must first determine how broadly to read that statute. *See Chambers v. United States*, 555 U.S.

---

5. The *Begay* Court in fact addressed the definition of a violent felony under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii). We have recognized that the definitions of "violent felony" in that act and "crime of violence" in the Guidelines are "close enough that precedent under the former must be considered in dealing with the latter." *United States v. Polk*, 577 F.3d 515, 519 n. 1 (3d Cir.2009) (citation omitted); *see also United States v. Hopkins*, 577 F.3d 507, 511 (3d Cir.2009) ("[T]he definition of a violent felony under the [Armed Career Criminal

Act] is sufficiently similar to the definition of a crime of violence under the Sentencing Guidelines that authority interpreting one is generally applied to the other[.]" (footnote and citations omitted)). Our sister circuits have made similar observations. *See United States v. Hart*, 578 F.3d 674, 677 n. 3 (7th Cir.2009); *United States v. Charles*, 576 F.3d 1060, 1068 n. 2 (10th Cir.2009); *United States v. Pratt*, 568 F.3d 11, 19 n. 7 (1st Cir.2009); *United States v. Wilson*, 562 F.3d 965, 967–68 (8th Cir.2009); *United States v. Archer*, 531 F.3d 1347, 1350 n. 1 (11th Cir.2008).

——, 129 S.Ct. 687, 690, 172 L.Ed.2d 484 (2009) ("Th[e] categorical approach requires courts to choose the right category. And sometimes the choice is not obvious."). It is undisputed that Johnson pled guilty only to subsection (a)(1) of the PSAS. As a consequence, we focus our analysis on that subsection alone.

Subsection (a)(1) of the PSAS imposes criminal liability on an individual "if he ... (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa. Cons.Stat. § 2701(a)(1).[6] The statute plainly criminalizes distinct types of conduct, all of which could constitute simple assault. Under these circumstances, we may resort to the materials outlined in *Shepard* to determine, not the factual circumstances of Johnson's conduct, but the specific part of § 2701(a)(1) to which Johnson in fact pled guilty. *See, e.g., Siegel,* 477 F.3d at 92 ("Clearly, the statute invites inquiry into the underlying facts of the case because we are unable to determine from the face of the statute which crime or crimes Siegel pleaded guilty to.... Commonly, the best way to resolve the question raised by a conviction under a statute phrased in the disjunctive, or structured in outline form, will be to look to the charging instrument or to the plea colloquy." (citation omitted)).

Here, the criminal information filed against Johnson charged, in relevant part, as follows:

The actor attempted to cause or intentionally, knowingly or recklessly caused bodily injury to Pamela Hall, that is to say the actor struck and/or choked and/or otherwise assaulted the victim, in violation of ... 18 Pa.C.S. § 2701(a)(1). (App. 126.)[7]

As the parties both acknowledge, the subsection of the PSAS to which Johnson pled guilty criminalizes intentional, knowing and reckless conduct. On appeal, Johnson renews his position that, because the criminal information does not specify his *mens rea* when he committed simple assault, and because the government presented no other evidence, such as his plea colloquy, to establish his *mens rea,* the District Court erred in concluding that his simple assault conviction constituted a crime of violence. He restates his view that a crime committed recklessly cannot be considered a crime of violence. In its brief, the government initially argued that Johnson's particular *mens rea* when he violated the PSAS is not relevant because all three states of mind enumerated in the statute satisfy *Begay.* The government urged us to find that the crime of which Johnson was convicted is "typically" committed intentionally. (Appellee's Br. 28.) However, in a letter submitted pursuant to Federal Rule of Appellate Procedure 28(j), the government tells us it has changed course:

[S]ince the filing of the government's brief, the Department of Justice has

---

6. The PSAS specifies that "[s]imple assault is a misdemeanor of the second degree" unless committed in two circumstances, 18 Pa. Cons.Stat. § 2701(b), neither of which is relevant here. Under Pennsylvania law, a crime is considered "a misdemeanor of the second degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than two years." 18 Pa. Cons.Stat. § 106(b)(7). A misdemeanor of the second degree is punishable by imprison-

ment for a maximum term of two years. 18 Pa.C.S. § 1104(2). Accordingly, the crime of simple assault satisfies the first part of the Guidelines' definition of "crime of violence" because it is punishable by a term of imprisonment exceeding one year.

7. The information also charged Johnson with two additional counts. The parties agree that Johnson pled guilty only to the count reproduced above.

clarified its position that reckless conduct, standing alone, is not the type of purposeful conduct that can constitute a crime of violence under § 4B1.2(a)(2)'s residual clause. Thus, to the extent that the government has argued that reckless conduct is sufficient to satisfy this standard, the government no longer rests on this position.

(Appellee's Rule 28(j) letter, Sept. 16, 2009.)

In light of the government's new position that reckless conduct does not qualify as a crime of violence, we have no occasion to consider whether Johnson's simple assault conviction is a crime of violence to the extent he acted recklessly.[8] Accordingly, our categorical assessment of the PSAS focuses only on whether an intentional or knowing violation of subsection (a)(1) of that statute may qualify as a crime of violence "in the ordinary case."

---

**8.** In *Dorsey*, we rejected the defendant's argument that a conviction for reckless conduct is not a crime of violence. We relied in part on pre-*Begay* circuit precedent to hold that "purely reckless crimes may count as predicate offenses for purposes of career offender guideline." 174 F.3d at 333 (citations omitted). Although we need not revisit the issue in this case, we question whether reckless conduct may amount to a crime of violence post-*Begay*. In *Begay*, the Court made plain that only "purposeful, violent, and aggressive conduct" may constitute a violent felony under the Armed Career Criminal Act. 128 S.Ct. at 1586 (internal quotation marks omitted). The Court distinguished that sort of conduct from drunk driving—the prior conviction of the petitioner in that case—which the Court noted "is a crime of negligence or recklessness, *rather than* violence or aggression." *Id.* at 1587 (emphasis supplied) (quotation omitted); *see Polk*, 577 F.3d at 519 ("Post-*Begay*, the distinction between active and passive crimes is vital...."). At the end of its decision the *Begay* Court summarized its holding as follows:

> [W]e hold only that, for purposes of the particular statutory provision before us, a prior record of DUI, a strict liability crime, differs from a prior record of violent and aggressive crimes committed intentionally such as arson, burglary, extortion, or crimes involving the use of explosives. The latter are associated with a likelihood of future violent, aggressive, and purposeful "armed career criminal" behavior in a way that the former are not.

128 S.Ct. at 1588. The Court's repeated invocation of "purposefulness," and the contrast the Court drew between that state of mind and negligence or recklessness, suggest that a crime committed recklessly is not a crime of violence. Indeed, nearly every court of appeals that has considered the issue has held that reckless conduct does not qualify as a crime of violence post-*Begay*. *See United States v. Baker*, 559 F.3d 443, 453 (6th Cir. 2009) (Tennessee reckless endangerment statute); *United States v. Roseboro*, 551 F.3d 226, 242–43 (4th Cir.2009) (South Carolina failure to stop for a blue light violation, requiring a reckless or negligent state of mind); *United States v. Smith*, 544 F.3d 781, 786–87 (7th Cir.2008) (Indiana criminal recklessness); *United States v. Gray*, 535 F.3d 128, 131–32 (2d Cir.2008) (New York reckless endangerment); *see also United States v. Herrick*, 545 F.3d 53, 57–60 (1st Cir.2008) (Wisconsin motor vehicle homicide statute, requiring criminal negligence); *but see Begay*, 128 S.Ct. at 1590 (Scalia, J., concurring) (noting that "one of the enumerated crimes [in the Armed Career Criminal Act]—the unlawful use of explosives—may involve merely negligent or reckless conduct" (citations omitted)); *United States v. Zuniga*, 553 F.3d 1330, 1334–35 (10th Cir.2009) (finding it "reasonable to surmise that those who possess deadly weapons in a penal institution typically intend to possess them," and thus concluding that the Texas statute criminalizing that conduct, whether intentional, knowing or reckless, satisfied *Begay*). Furthermore, in pre-*Begay* cases, we held in other contexts that a PSAS violation is not a crime of violence because such a violation may be committed with a *mens rea* lower than intent. *See United States v. Otero*, 502 F.3d 331, 335 (3d Cir.2007) (concluding that a PSAS violation is not a crime of violence under U.S.S.G. § 2L1.2); *Popal v. Gonzales*, 416 F.3d 249, 254 (3d Cir.2005) (holding that an alien's PSAS conviction was not a crime of violence under 18 U.S.C. § 16(a) that would render the alien removable as an aggravated felon).

*James*, 550 U.S. at 208, 127 S.Ct. 1586. We have no trouble concluding that such a violation would qualify.

At the first step of our inquiry under *Begay*, we ask whether intentional or knowing simple assault presents a serious potential risk of physical injury. We easily answer that question in the affirmative. In the ordinary case, a violation of the PSAS poses a degree of risk of physical injury because the defendant must cause or attempt to cause bodily injury to the victim. In other words, the statute itself contemplates bodily harm to the victim as a prerequisite to conviction. *See Commonwealth v. Smith*, 848 A.2d 973, 976 (Pa.Super.Ct.2004) ("Bodily injury is an element of Simple Assault[.]"). In short, we cannot imagine a scenario in which simple assault under Pennsylvania law could not present a risk of physical injury. *Cf. James*, 550 U.S. at 207–08, 127 S.Ct. 1586 ("[The Armed Career Criminal Act] does not require metaphysical certainty.... One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury.... But that does not mean that [such an] offense[ ] ... [is] categorically nonviolent.").

We likewise find that the other requirements articulated in *Begay*—that the defendant's crime must present a degree of risk similar to that presented by the enumerated crimes and also be similar in kind to those offenses—are readily satisfied in this case. As noted above, the PSAS predicates criminal liability on a finding that the defendant caused or attempted to cause bodily injury to the victim. Pennsylvania law defines "bodily harm" as "[i]mpairment of physical condition or substantial pain." 18 Pa. Cons.Stat. § 2301. A conviction under that statute therefore poses a risk of injury that is more or less comparable to the enumerated crimes. *See James*, 550 U.S. at 199, 127 S.Ct. 1586 (holding that attempted burglary is a "violent felony" under the Armed Career Criminal Act because, like the enumerated crimes, it "create[s] significant risks of bodily injury or confrontation that *might result* in bodily injury" (emphasis added)). Indeed, a conviction under the PSAS in most instances poses a greater risk of bodily injury than that presented by extortion, for instance, one of the enumerated crimes.

Simple assault under Pennsylvania law is also similar in kind to the enumerated crimes.[9] That crime, to the extent it is committed intentionally or knowingly, is by definition purposeful. *Cf. United States v. Harrison*, 558 F.3d 1280, 1295 (11th Cir. 2009) (finding that Florida's "Willful Fleeing Statute" requires conduct that is "purposeful and intentional"), *cited with approval in Hopkins*, 577 F.3d at 514–15; *see also Begay*, 128 S.Ct. at 1587 (equating "crimes involving intentional or purposeful conduct"); *see also, e.g., United States v. Wilson*, 568 F.3d 670, 674 (8th Cir.2009) (concluding that Missouri's child abuse

---

9. Johnson argues that Pennsylvania simple assault is not similar in kind to the enumerated crimes because it is not a crime against property. That argument is singularly unconvincing. As the Tenth Circuit has observed, although *Begay* discusses the fact that Congress intended that § 924(e)(2)(B)(ii) cover physically risky property crimes, the dispositive section of the *Begay* opinion specifically holds, instead, that the [Armed Career Criminal Act]'s residual language includes prior convictions for offenses that, like burglary, arson, extortion or crimes involving explosives, concern conduct that is purposeful, violent, and aggressive.
*United States v. West*, 550 F.3d 952, 967 (10th Cir.2008) (internal quotation marks and citation omitted). We agree. Nothing in *Begay* unequivocally establishes that the residual clause is restricted to crimes against property, and no case law interpreting that provision post-*Begay* suggests as much.

statute "satisfies *Begay*'s purposeful conduct requirement based on the offense's *mens rea* of *knowingly* inflicting cruel and inhuman punishment" (emphasis in original) (citation omitted)); *United States v. Almenas*, 553 F.3d 27, 34 (1st Cir.2009) (concluding that "[t]he purposefulness requirement is easily met" by Massachusetts' resisting arrest statute because "[b]oth methods of resisting arrest require the offender to act knowingly"); *United States v. Rooks*, 556 F.3d 1145, 1151 (10th Cir.2009) (*"Begay*'s instruction that the proscribed conduct be purposeful is easily satisfied here, as the statute on its face requires knowing and intentional conduct by the defendant.").

Finally, there can be no doubt that simple assault is at least as violent and aggressive as the enumerated crimes because a defendant who intentionally or knowingly commits that offense intends to impair the victim's physical condition or cause her substantial pain, while no such objective is required by the enumerated crimes. *Cf. Begay*, 128 S.Ct. at 1586 ("[B]urglary is an unlawful or unprivileged entry into a building or other structure with intent to commit a crime.... [A]rson is causing a fire or explosion with the purpose of, e.g., destroying a building of another or damaging any property to collect insurance.... [E]xtortion is purposely obtaining property of another through threat of, e.g., inflicting bodily injury[.]" (other alterations,

internal quotation marks and citations omitted)).

█ In sum, an intentional or knowing violation of the PSAS is a crime of violence under U.S.S.G. § 4B1.2(a)(2). Accordingly, Johnson is subject to U.S.S.G. § 2K2.1(a)(4)(A)'s base offense level calculation so long as one of the materials authorized by *Shepard* establishes that he admitted to acting with one of those intents.

█ In its Rule 28(j) letter, the government resubmits its request that we find that Johnson's PSAS conviction constitutes a crime of violence based only on the criminal information. In the government's view, the language of the information makes sufficiently clear that Johnson's conviction was based on intentional as opposed to reckless conduct. We do not see in the information the degree of clarity urged by the government. The information largely tracks the statutory language in § 2701(a)(1), thereby charging Johnson with different types of simple assault. Admittedly, the information's allegation that Johnson "struck and/or choked" his victim strongly suggests that his conduct was intentional and knowing. Under the particular circumstances presented here, however, we do not believe that we can conclusively determine, based on the information alone, whether Johnson actually admitted to acting intentionally or knowingly.[10] Accordingly, we must decline the

---

**10.** Although raised by neither party, we note that in *United States v. Siegel*, 477 F.3d 87 (3d Cir.2007), we held that a defendant admits the PSR's factual allegations by failing to object to them. *Id.* at 93–94 ("[F]acts averred in the PSR acceded to by Siegel avoid the 'collateral trial[ ]' and 'judicial factfinding' preempted by the Court's holding in *Shepard.*").

The PSR in this case outlines the facts giving rise to Johnson's 2002 simple assault conviction:

[T]he defendant got into a physical altercation with Pamela Hall, the mother of his children. He struck Ms. Hall in the side of the head with a candlestick, causing a one inch cut to her head.... In addition, the defendant removed a silver handgun from his waistband, pointed it at Ms. Hall, and stated, "I should shoot you in the head right now."

(PSR ¶ 28.)

Based on the PSR's factual account—to which Johnson apparently did not object—it

government's invitation to engage in what is, at least in this particular case, a speculative exercise that could implicate the very concerns the Supreme Court has expressed in explaining the prohibition on inquiries into the factual predicates of a defendant's crime under these circumstances. *See Shepard,* 544 U.S. at 25–26, 125 S.Ct. 1254 (explaining that such a factual inquiry risks running afoul of the Sixth and Fourteenth Amendments as interpreted in *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) and *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). Of course, the question whether a particular charging document contains sufficient information to permit a conclusion about the character of a defendant's previous conviction will vary from case to case. We do not foreclose the possibility that language of the kind at issue here may suffice in another case.

The government also asks us, in the event we do not find Johnson's simple assault conviction to be a crime of violence based exclusively on the information, to remand this case to the District Court for consideration of Johnson's plea colloquy. The government maintains that the transcript, previously unavailable for logistical reasons, is now ready for review and clarifies the *mens rea* to which Johnson actually pled guilty.

In his response to the government's Rule 28(j) letter, Johnson objects to the notion of a remand, arguing in essence that the government should not be given the opportunity to present now what it should have presented earlier in these proceedings. He relies on our decision in

*United States v. Dickler,* 64 F.3d 818 (3d Cir.1995), in which we held that, as a general matter,

> where the government has the burden of production and persuasion as it does on issues like enhancement of the offense level . . ., its case should ordinarily have to stand or fall on the record it makes the first time around. It should not *normally* be afforded a second bite at the apple.

*Id.* at 832 (emphasis supplied and internal quotation marks and citations omitted). We clarified, however, that there is "no constitutional or statutory impediment to the district court's providing the government with an additional opportunity to present evidence on remand *if it has tendered a persuasive reason why fairness so requires.*" *Id.* (emphasis supplied and citations omitted).

 In this case, the government states that its earlier inability to produce the plea colloquy before the District Court was a result of personnel turnover in the office that provides transcription services for the court in which Johnson's simple assault conviction arose. Under the particular circumstances presented here, we believe that the government has tendered an adequate explanation and that it should not be foreclosed from presenting the transcript of Johnson's plea colloquy.

## IV.

For the foregoing reasons, we will vacate Johnson's sentence and remand for re sentencing.[11] On remand, the District Court may not inquire into the factual predicate of Johnson's simple assault conviction. Instead, the Court is restricted to

is difficult to conceive that Johnson did not commit simple assault intentionally and knowingly. Still, what matters is the *mens rea* to which Johnson actually pled guilty. Significantly, that question cannot be answered on the basis of the PSR either. As a

consequence, *Siegel* does not govern the outcome of this case.

11. Given this disposition, we do not reach Johnson's challenge to the procedural and substantive reasonableness of his sentence.

considering the materials outlined by the Supreme Court in *Shepard* for the sole purpose of determining to which part of the PSAS Johnson actually pled guilty.[12] *See United States v. Woods,* 576 F.3d 400, 405 (7th Cir.2009) ("[T]he additional materials permitted by *Shepard* may be used only to determine *which* crime within a statute the defendant committed, not *how* he committed that crime." (emphasis in original)). In the event those materials do not demonstrate the *mens rea* to which Johnson pled guilty, his simple assault conviction cannot qualify as a crime of violence in this case in light of the government's representation that it does not seek to define that conviction as a crime of violence to the extent it is premised on reckless conduct.[13]

12. We note that our resolution of this case is roughly consistent with the Seventh Circuit's decision in *United States v. Smith,* 544 F.3d 781 (7th Cir.2008). The defendant in that case had a prior conviction for criminal recklessness under an Indiana statute that defined "criminal recklessness" as follows: "(b) A person who recklessly, knowingly, or intentionally performs: (1) an act that creates a substantial risk of bodily injury to another person; or (2) hazing; commits criminal recklessness." Ind.Code § 35–42–2–2(b). The Seventh Circuit held, in light of *Begay,* that "crimes requiring only a *mens rea* of recklessness cannot be considered violent felonies under the residual clause of the [Armed Career Criminal Act]." *Id.* at 786. The court noted, however, that the Indiana statute at issue criminalized both non-purposeful as well as purposeful conduct. *Id.* The court explained, as we have explained, that in such instances a sentencing court is permitted to review certain records, per *Shepard,* to ascertain "whether the jury actually convicted the defendant of (or, in the case of a guilty plea, the defendant expressly admitted to) violating a portion of the statute that constitutes a violent felony." *Id.* (emphasis and citations omitted). The court explained that such an

approach could not be followed in that particular case:

> As likely will be true in many instances of convictions under a statute that contemplates reckless behavior, the juries that convicted Mr. Smith of criminal recklessness were not asked to determine whether he acted knowingly or intentionally; Mr. Smith also did not admit to acting with that intent. Therefore, under the categorical approach, we cannot look to the facts of his particular convictions to determine for ourselves whether his conduct was knowing or intentional, on the one hand, or merely reckless on the other.

*Id.* at 787.

For the reasons already discussed, we cannot determine, based on the instant record, whether Johnson admitted to any particular type of intent during his plea colloquy. Therefore, unlike the *Smith* Court, the District Court in this case may be able to make that determination on remand.

13. We reiterate that our holding does not reach the question whether reckless conduct, either under the PSAS or as a general matter, may qualify as a crime of violence.