**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-1120
_____

UNITED STATES OF AMERICA

v.

SEAN FOREHAND,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(Criminal No. 07-620)
District Judge: Hon. Joel A. Pisano

Argued November 19, 2009

Before: RENDELL, BARRY, and CHAGARES, <u>Circuit</u> <u>Judges</u>.

(Filed: July 14, 2010)

_____

Andrea D. Bergman (argued)
Assistant Federal Public Defender
22 South Clinton Avenue
Station Plaza # 4, 4th Floor
Trenton, NJ 08609
<u>Counsel for Appellant</u>

George S. Leone, Esq.
Chief, Appeals Division
970 Broad Street
Suite 700
Newark, NJ 07102

Ralph J. Marra, Jr.
Acting United States Attorney
Norman Gross (argued)
Assistant United States Attorney
Camden Federal Building and U.S. Courthouse
401 Market Street, Fourth Floor
Camden, NJ 08101-2098
Counsel for Appellee

_____

OPINION OF THE COURT
_____

CHAGARES, Circuit Judge.

Sean Forehand appeals from the District Court's denial of his motion to suppress evidence. Forehand claims that the traffic stop which led to the discovery of the evidence in question, a firearm discovered on his person, was unlawfully extended, and that the officer who discovered the weapon did not have a reasonable suspicion that he was armed. Forehand also appeals the sentence imposed on him by the District Court after he entered a conditional guilty plea to possession of a firearm while convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) and (2). Forehand claims that the District Court erred in holding that he had been convicted of at least three "violent felonies" as that term is defined by 18 U.S.C. § 924(e)(1) and was thus subject to a fifteen-year mandatory minimum sentence. For the reasons set forth below, we will affirm.

2

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts.

In the early morning of October 3, 2006, Forehand was a passenger in the front seat of a sport utility vehicle driven by Perry Veney, Jr. Officer Mike Allen of the Neptune Police Department, using the license plate number, discovered that the owner of the vehicle, Perry Veney, Sr., had an expired driver's license. Allen activated his lights and siren and pulled the vehicle over.[1]

Officer Allen approached the driver's side of the vehicle, and asked Veney for his paperwork. Instead, Veney handed Officer Allen his ATM card, and Officer Allen testified later that Veney smelled strongly of alcohol and had bloodshot eyes. Officer Allen also testified that Forehand, Veney, and Pierce, who was riding in the back seat, were acting "fidgety" and kept putting their hands in their pockets. Officer Allen claimed that he did not feel safe administering a field sobriety test on the driver without more officers on the scene to monitor the other passengers in the vehicle. He called for back-up, and waited in his patrol car for other officers to arrive.

When the other officers arrived, they informed Officer Allen that there had been a

---

[1] Allen also claimed he pulled the vehicle over because it had no front license plate and tinted windows. Evidence was introduced which indicated that the vehicle had a front license plate, and did not have illegally tinted windows. However, since there is no dispute that Veney Sr.'s driver's license was expired, Forehand does not contest the validity of the initial stop.

shooting nearby a few hours earlier. According to witnesses, the perpetrators of that crime had been three African-American men wearing dark clothing and driving a dark SUV. Veney, Forehand, and Pierce fit this description. Veney was at this point asked to step out of the vehicle, which he did, was patted down, and stood at the back of the vehicle under the supervision of several nearby police officers. Next, Forehand was asked to exit the vehicle, and when Officer Allen patted him down, he discovered a semiautomatic handgun on his person. The gun had an obliterated serial number, and Forehand was placed under arrest.

Forehand was indicted by a grand jury of violating 18 U.S.C. § 922(g). Forehand moved to suppress the handgun, asserting that it was discovered in violation of his constitutional rights. The District Court denied his motion, specifically finding Officer Allen's testimony credible. The District Court held that Officer Allen had probable cause to believe that Veney was intoxicated, but was justifiably concerned that he could not safely conduct a field sobriety test without the presence of more officers. When the other officers arrived and informed him of the shooting, the focus of the stop changed, and given that the occupants of the vehicle matched the description of the shooters and that they were acting "fidgety" and kept putting their hands in their pockets, the District Court found that Officer Allen had reasonable suspicion to believe that Forehand might be armed and dangerous.

Forehand then entered a conditional guilty plea, in which he reserved the right to

4

appeal the denial of his motion to suppress, as well as any finding by the District Court that he had committed three or more violent felonies within the meaning of the Armed Career Criminal Act (ACCA). The District Court did make such a finding, which meant that Forehand was subject to a fifteen-year mandatory minimum sentence. He was ultimately sentenced to 180 months of imprisonment. Forehand filed a timely appeal challenging both determinations by the District Court.

## II.

The District Court had original jurisdiction over this matter pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction over the District Court's denial of Forehand's Motion to Suppress under 28 U.S.C. § 1291, and over the District Court's final sentence under 18 U.S.C. § 3742.

This Court reviews any factual determinations made by the District Court in denying a motion to suppress for clear error. United States v. Price, 558 F.3d 270, 276 (3d Cir. 2009). When reviewing a denial of a motion to suppress, "[w]e construe the record in the light most favorable to the government." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002). We review a sentencing court's determination of the proper classification of a prior conviction under a plenary standard of review. See United States v. Hopkins, 577 F.3d 507, 509 (3d Cir. 2009).

## III.

Forehand asserts that the District Court erred in denying his motion to suppress.

5

We disagree.

Forehand contends that there is substantial evidence, including the recording from Officer Allen's dashboard camera, which sufficiently contradicts Officer Allen's testimony to the extent that it was clearly erroneous for the District Court to credit that testimony. The recording does seemingly fail to support Officer Allen's testimony on several issues – the recording never shows Officer Allen asking Veney if he had been drinking, informing other officers who arrived on the scene that he suspected Veney of drinking, or attempting to conduct a breathalyzer or field sobriety test. Officer Allen also testified that the occupants of the SUV were "fidgeting" and putting their hands in their pockets, even though he repeatedly told them to stop doing so. However, the recording only captures one instance of him telling anyone to stop "fidgeting" or keep their hands out of their pockets, and that occurred at the point when Officer Allen asked Forehand to step out of the vehicle, when Officer Allen specifically told Forehand to remove his hands from his pockets.

But the police video should only be considered as one piece of evidence in making a factual determination, and the fact that a video may not fully support the testimony of a police officer is not necessarily grounds for finding the officer's testimony as not credible. See, e.g., United States v. Castorena-Jaime, 285 F.3d 916, 925-26 (10th Cir. 2002). Much of the reasoning given by Officer Allen as to why he extended the stop was based upon what he observed inside the SUV, such as the occupants' behavior inside the

6

automobile and the strong smell of alcohol emanating from therein, which cannot be verified or disproved by the video. Forehand's claim that the video directly contradicts Officer Allen's testimony regarding certain things he later claimed to have said to the occupants of the vehicle and his fellow police officers is undermined by the poor audio quality of the recording, which renders a substantial portion of what was said on the scene completely inaudible.

In claiming that the video contradicts Officer Allen's later testimony, and pointing out that two out of the three reasons given by Officer Allen for initiating the stop appear to have been untrue, Forehand has raised questions about Officer Allen's credibility. However, the District Court explicitly found that Officer Allen's testimony was credible with regard to the facts surrounding the traffic stop and subsequent frisk of Forehand's person. (App. 195-96.) Since we review all denials of motions to suppress in the light most favorable to the Government, and review factual determinations for clear error, we can only reverse if the appellant has left this Court with a definite and firm conviction that the facts found by the District Court were incorrect. Forehand has failed to produce any evidence which leaves us with such a conviction, so we will affirm the District Court's denial of his motion to suppress.

IV.

We next turn to Forehand's appeal of the District Court's determination that he had been convicted of three or more crimes which would be considered a "violent

7

felonies" under the ACCA. The Act provides that a crime is a violent felony if it is punishable by more than one year of imprisonment, and "has as an element the use, attempted use, or threatened use of physical force against another." 18 U.S.C. § 924(e)(1)(B)(i). A crime which is a violent felony "typically involve[s] purposeful, violent, and aggressive conduct." Begay v. United States, 553 U.S. 137, 144-45 (2008). The District Court determined that Forehand's two prior convictions for aggravated assault and two prior convictions for making a terroristic threat all qualified as violent felonies under § 924(e),[2] and Forehand was therefore subject to a fifteen-year mandatory minimum sentence. Forehand asserts that those convictions do not qualify as violent felonies because he was neither found guilty of nor acknowledged violating the subsection of the criminal statutes in question that prohibit intentional acts of threatening or actual violence. We disagree.

"We generally use a categorical approach to classify a prior conviction." United States v. Johnson, 587 F.3d 203, 208 (3d Cir. 2009) (citing Taylor v. United States, 495 U.S. 575, 600-02 (1990)). In doing so, we look to whether the crime is punishable by more than one year of imprisonment, and whether elements of the crime include

---

[2] While the District Court found that all four of these convictions were violent felonies under § 924(e), the Government only addresses three of them in its brief. Since it makes no argument as to why the District Court's determination that Forehand's other conviction for making a terroristic threat was correct, and Forehand stated at the plea colloquy that the threat in question was a "joke," we only consider the 2000 terroristic threat conviction and the two aggravated assault convictions.

intentional conduct, and "the use, attempted use, or threatened use of force against another." However, if the statute criminalizes both intentional and reckless or negligent conduct, then the statute is divisible, and we "must apply a modified categorical approach by which a court may look beyond the statutory elements to determine the particular part of the statute under which the defendant was actually convicted." United States v. Stinson, 592 F.3d 460, 462 (3d Cir. 2010); see also Johnson, 587 F.3d 203, 208 (3d Cir. 2009) ("Where a statute criminalizes different kinds of conduct, some of which would constitute crimes of violence while others would not, a court may look beyond the statutory elements to determine the particular part of the statute of which the defendant was actually convicted.").[3] In determining which part of a statute under which a defendant was convicted, we may look to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record." Shepard v. United States, 544 U.S. 13, 17 (2005);

Both of the criminal statutes at issue, N.J. Stat. Ann. § 2C:12-3(a) (terroristic threats) and N.J. Stat. Ann. § 2C:12-1(b) (aggravated assault), prohibit both intentional

---

[3] The Johnson decision dealt with the issue of whether or not a prior conviction was a "crime of violence" for sentencing purposes under U.S.S.G. § 4B1.2. So while it is not directly on point, since it does not deal with the issue of whether a conviction was a violent felony under the ACCA, this Court has recognized that the definitions of "violent felony" and "crime of violence" are "close enough that precedent under the former must be considered in dealing with the latter." United States v. Polk, 577 F.3d 515, 519 n.1 (3d Cir. 2009); see also United States v. Hopkins, 577 F.3d 507, 511 (3d Cir. 2009).

and reckless conduct. We may therefore look to certain portions of the judicial record to determine whether Forehand pled guilty to the intentional subsections of the statutes in question. All of the charging documents for Forehand's convictions at issue simply recited the elements of the relevant criminal statute, so those give us no further information as to the nature of Forehand's convictions. We must look to the plea colloquy transcripts to determine whether Forehand acknowledged that he was pleading guilty to an intentional criminal violation.

In 2000, Forehand was convicted of making a terroristic threat involving an incident in which he threatened to kill a police officer. He pled guilty, and at the plea colloquy, was specifically asked, "[a]nd you did intend to terrorize him by making those threats?," to which he responded, "[y]es." (App. 366.) This was a direct, explicit acknowledgment that he was pleading guilty to intentionally threatening the use of physical force against a police officer, and this conviction therefore qualifies as a violent felony under § 924(e).

In 1993, Forehand pled guilty to a charge of aggravated assault arising out of an incident where he stabbed a man during a fight. At the plea colloquy, the judge questioned Forehand about the incident, and Forehand reported that the men had gotten into a fight, at which point Forehand removed a knife that he had on his person and stabbed the victim. (App. 347-48) ("We had gotten into it and I stabbed him.").

In 2000, Forehand pled guilty to another charge of aggravated assault, arising out

of an incident in which he was approached by two police officers seeking to arrest him on an outstanding warrant, at which time he got into a fight with the officers and hit them with a "baseball bat type object" he was carrying. At the plea colloquy, while being questioned about the events, Forehand revealed that he knew they were police officers there to arrest him, and that a fight broke out and he hit them with his stick. (App. 367-69.) Later in the colloquy he acknowledged, relating to a separate charge of unlawful possession of a weapon, that the unlawful purpose of his possession of that weapon was to hit the police officers in question. (App. 369.)

Forehand's statements made during the plea colloquies for both of his aggravated assault convictions are sufficient to establish that those convictions were for intentional criminal acts. In both instances, Forehand acknowledged getting into a fight and then using a weapon in his possession to strike and harm the victims. Forehand would have us impose an artificial "magic words" test in situations like the one currently before us, in which the Court could never hold that a defendant pled guilty to an intentional crime absent the use of the words "intentional," "willful" or "purposeful" at the colloquy. But such an artificial restriction would be illogical and inequitable, and is not required. Cf. James, 550 U.S. at 207 ("ACCA does not require metaphysical certainty.").

Of course, we are prohibited by the Sixth Amendment from looking beyond the judicial record, Johnson, 587 F.3d at 208, or even trying to interpret ambiguous statements within the judicial record to try to determine the factual circumstances of the

11

crime.  However, when we have a situation like the present one, where the defendant has made a clear acknowledgment in open court that the crime to which he was pleading guilty was for intentional prohibited conduct, we are not engaging in impermissible factual determination simply by recognizing such an acknowledgment, even in the absence of terms like "intentional," "willful," or "purposeful."  Forehand's statements that he got into a fight, and then used a weapon he was carrying on his person to stab or hit the victim in each instance, can only be reasonably understood, using the logical and ordinary construction of the words and terms used, to be a clear acknowledgment that he was pleading guilty to an intentional violation of the criminal law in each instance.

Since Forehand acknowledged in three of his prior plea colloquies that he was pleading guilty to violating the subsections of the statutes in question which criminalize intentional conduct, all three of those convictions had "as an element the use, attempted use, or threatened use of physical force against another."  18 U.S.C. § 924(e)(1)(B)(i).  The District Court was therefore correct in its holding that those convictions were violent felonies under the ACCA, and that Forehand was therefore subject to a fifteen-year mandatory minimum sentence of imprisonment.

V.

For these reasons, we will affirm the judgment of the District Court.