RESTREPO, Circuit Judge,
concurring in part and concurring in the judgment.
I join parts I, II, 111(A)(1), and 111(B)-(H) of the Opinion of the Court, which address the parties’ arguments concerning the application of the third party doctrine to historical cell site location information (“CSLI”); applications of the federal Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq., to discretionary trial procedure decisions of the District Court; introduction of evidence about Orthodox Jewish law; propriety of jury instructions and the District Court’s response to jury questions; admission of coconspirator statements; sufficiency of evidence; and outrageous government conduct. However, I concur only in the-judgment with respect to parts III(A)(2)-(3), • because I believe that the Government obtaining 57 days of aggregated CSLI with only a § 2703(d) order supported by reasonable suspicion is, in this case, a warrantless search that violates the Fourth Amendment. I depart from the Majority because of two Supreme Court opinions that have issued since our own Court last considered this issue.
I
“[T]he holding of a panel in a prece-dential opinion”—such as that in our Court’s most recent opinion on law enforcement requests for CSLI, In the Matter of the Application of the United States for an Order Directing a Provider of Electronic Communication Service to Disclose Records to the Government, 620 F.3d 304 (3d Cir. 2010) (“In re Application”)—“is binding on subsequent panels.” Third Circuit I.O.P. 9.1. This rule exists for good reason: it maintains uniformity of law within the Circuit, and promotes predictability for. litigants. However, if Supreme Court authority abrogates or calls existing Circuit precedent into question, our Court has recognized that subsequent panels may decline to follow the prior holding without reconsidering the issue en banc. George Harms Constr. Co., Inc. v. Chao, 371 F.3d 156, 161 (3d Cir. 2004); see also Reich v. D.M. Sabia Co., 90 F.3d 854, 858 (3d Cir. 1996).
This exception to our Internal Operating Procedures is narrow. When our Court has declined to follow past precedent on the basis of intervening Supreme Court authority, we typically have declined to follow only the specific portions of the prior precedent that the intervening authority has called into question or abrogated. United States v. Johnson, 587 F.3d 203, 207 n.4 (3d Cir. 2009); see also Animal Science Prods., Inc. v. China Minmetals Corp., 654 F.3d 462, 467-68 (3d Cir. 2011). I agree with the Majority that the third party doctrine holding of In re Application has not been called into question by subsequent authority. However, I take a different view "on the ongoing vitality of the reasonable expectation of privacy analysis in In re Application, in light of Supreme Court opinions in United States v. Jones, 565 U.S. 400, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), and Riley v. California, — U.S. —, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014).
Jones and Riley have “sufficiently undercut the decisional basis” of In re Appli *276 cation’s holding that magistrate judges can issue a § 2703(d) order for aggregated location information, rather than requiring a warrant, in many instances. West v. Keve, 721 F.2d 91, 93 (3d Cir. 1983). In re Application- held that magistrate judges could require a warrant for CSLI upon considering the individual surveillance target’s reasonable expectation of privacy under the Fourth Amendment. With the more recent guidance of Jones and Riley, I would conclude that in at least most factual circumstances—including those before us—magistrate judges must require a warrant for the aggregated collection of historical CSLI to comply with the Fourth Amendment.
In Jones, law enforcement officers surreptitiously placed a tracking device on the bumper- of 'a' surveillance target’s car without a valid warrant, and collected 28 days’ worth of global positioning system (“GPS”) location data. Jones, 565 U.S. at 403, 132 S.Ct. 945. The lead opinion in Jones held that this conduct violated the Fourth Améndment because of the physical trespass committed. Id. at 404-05, 132 S.Ct. 945. In what has come to be regarded as the “shadow majority” of Jones,[1] however, five Justices in two concurrences disagreed with tile reasoning of the lead' opinion, which “disregards what is really important (the use of a GPS for the purpose of long-term tracking).” Jones, 565 U.S. at 424, 132 S.Ct. 945 (Alito, J., concurring) (emphasis in original). Those Justices found a constitutional privacy interest implicated by aggregated tracking of an individual’s location over time. Id. at 430, 132 S.Ct. 945 (Alito, J., concurring); id. at 413-14, 132 S.Ct. 945 (Sotomayor, J., concurring).[2] That reasonable expectation of privacy reflects- the intrusion that occurs when the Government can aggregate enough location data on individuals to draw inferences about their private lives and constitutionally protected activities. Id. at 416, 132 S.Ct. 945 (Sotomayor, J., concurring). The concurrences-place more weight on protecting the privacy interest itself, and, in particular, considering the aggregation of information obtained-by the Government, Id. at 426, 132. S.Ct. 945 (Alito, J., concurring); id. at 414, 132 S.Ct. 946 (Sotomayor, J., concurring).
Historically, this interest has been protected in part by resource constraints facing law-enforcement agencies—but those resource constraints .no longer present an obstacle to this type of aggregation. In the past, obtaining aggregated location information on any individual by tracking him or her “for any extended period of time was difficult and costly and therefore rarely undertaken.” Id. at 429, 132 S.Ct. 945 (Alito, J., concurring). Constant monitoring of an individual’s location is possible now, however, because of new technology “available at a relatively low cost.” Id., at 416, “132 S.Ct. 945 (Sotomayor, J., concurring); id. at 429, 132 S.Ct. 945 (Alito, J., concurring). Those former resource constraints, however, have shaped what .the Jones shadow majority recognized as a reason *277 able expectation of privacy. Historically, “society’s expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue every single movement of an individual’s car for a very long period.” Id, at 430, 132 S.Ct. 945 (Alito, J., concurring).
Here, in its § 2703(d)'application to the Magistrate Judge, the Government requested location information for 57 total days. Such a quantity of location information prompts exactly the-question Justice Sotomayor posed in Jones: “whether people reasonably expect that their movements will be recorded and aggregated in a manner that enables the Government to ascertain, more or less at will, their political and religious beliefs, sexual habits, and so on.” Jones, 565 U.S. at 416, 132 S.Ct. 945 (Sotomayor, J., concurring); see also id. at 419, 132 S.Ct. 945 (Alito, J., concurring). Five Justices in Jones would answer that question in the negative—at least as to , aggregation exceeding “the 4-week mark.” Id. at 430, 132 S.Ct. 945 (Alito, J., concurring); see also id at 415, 132 S.Ct. 945 (Sotomayor, J., concurring).
The Majority declines to read the Jones concurrences as undercutting “In re Application in any meaningful, way” in part “because -of the different technologies at issue.” Maj. Op. 265, To the extent that tracking an individual’s cell phone by CSLI and tracking an individual’s car by GPS differ, the privacy interest that protects an individual from the. Government aggregating . that location information (without a warrant):remains the same. If anything, the reasonable expectation of privacy in aggregated location derived from an individual’s use of a cell phone is stronger than the reasonable expectation of privacy in aggregated location derived from that same individual’s use of a car. Aggregating data points from .cell phone location into a comprehensive record offers the Government more opportunity to infer things about an individual, because cell phones accompany individuals many places that cars do not. “Historic location information ... can reconstruct someone’s specific movements down to the minute, not only around town but also within a particular .building,” Riley, 134 S.Ct. at 2490. Moreover, cell phones accompany individuals who travel by public transit or otherwise not by car, regular drivers who temporarily rent a different car, and those who ride in the cars of others. And regardless of how an individual moves through the world, “nearly three-quarters of.smart-phone users , report being within five ¡ feet of-their phones most of the time, with 12% admitting that they even use their phones in the shower.” Id.
The Majority also reads the Jones shadow majority as not undercutting In re Application in part because of the distinction in precision between GPS data—at issue in Jones—and the CSLI at issue here. This distinction has nearly disappeared since we decided In re Application. By the time of the events at issue in this case, CSLI had grown quite precise, particularly in more densely-populated jurisdictions.[3] In cities where wireless providers have more towers to provide service for more people packed into a given area, the identifiable radius in which a subscriber would connect to one tower rather, than another is substantially smaller. In explaining this concept to the jury, the Government’s expert at trial noted that the layout of “tightly compacted towers in Brooklyn” “will reduce the coverage area *278 of’ any one tower. App. 3494a. The number of towers and antennas in Brooklyn, for instance, allowed the expert to note proximity to an antenna on “the side of a building near the intersection of Webster Avenue and ... Coney Island Avenue.” Id. The expert also used CSLI to describe an individual’s “southbound movement on I-278.” App. 3499a-500a.
By contrast, when the In re Application court considered this issue, CSLI did “not provide information about the location of the caller closer than several hundred feet.” In re Application, 620 F.3d at 311. Since then, wireless network improvements have included the distribution of “hundreds of thousands of ‘microcells,’ ‘pi-cocells,’ and ‘femtocells,’” which function similarly to hotspots and create CSLI that “can in some cases be more accurate than GPS.” Stephanie K. Pell & Christopher Soghoian, Can You See Me Now?: Toward Reasonable Standards For Law Enforcement Access To Location Data That Congress Could Enact, 27 Berkeley Tech. L.J. 117, 132 (2012). Even the proliferation of traditional cell towers has resulted in smaller coverage areas and CSLI that is “far more accurate—in some cases as good as GPS.” Id. at 133.
The reasonable expectation of privacy of an individual in an urban area in the aggregated location information of his or her CSLI is functionally indistinguishable from the reasonable expectation of privacy of that same individual in the aggregated location information of his or her GPS data. Distinguishing Jones on the basis of the greater precision of GPS ignores the current capabilities of CSLI, and indeed, the use the Government made of it in this case.
Although the Majority distinguishes Riley from the facts here by separating contents and metadata, Riley should inform our analysis of the reasonable expectation of privacy in CSLI, as well. The animating principle behind Riley is the same as the principle behind Jones: the Government piay violate an individual’s reasonable expectation of privacy when it obtains too much aggregated information without a warrant. In Riley, decided two years after Jones, the aggregation at issue merely took a different form. There, the Supreme Court recognized that the aggregation of data allowed by the increased capacity of digital storage helps law enforcement agents make inferences that intrude on an individual’s reasonable expectation of privacy. The Court held unconstitutional a warrantless search of a cell phone, in part because the types of information stored on the cell phone in question “reveal[ed] much more in combination than any isolated record.” Riley, 134 S.Ct. at 2489.
The Riley Court rejected applications of doctrine created for older technologies that allowed for less aggregation of historically protected information. The Court distinguished call logs on modern cell phones from pen registers in part on the basis that “call logs typically contain more than just phone numbers; they include any identifying information that an individual might add.” Id. at 2493. While cataloguing the different types of data stored on cell phones that had not historically been stored on landline telephones, the Court explained that doctrines governing “qualitatively different” pre-digital counterparts do not compare well to modern technology in considering questions of criminal procedure. Id. at 2490, 2493. Allowing warrant-less collection by analogy to older technologies would instead cause “a significant diminution of privacy.” Id. at 2493.
Here, technological changes since In re Application in the provision of wireless service mean that CSLI—like the phone itself, in Riley—conveys a greater quantity of information for the Government to ag *279 gregate than it did previously. The Government’s application for CSLI encompassed more data points than merely the location at the time of incoming or outgoing telephone calls. In requesting “[a]ll data about which ‘cell towers’ and ‘sectors’ received a radio signal from each cellular telephone or device assigned to the Account, including, but not limited to, per call management data or return Time from Tower data,” App. 459 (emphasis added), the Government sought information that would allow for essentially continuous location tracking, rather than rare location snapshots. AT & T, from which the government sought and obtained the information, collects CSLI data upon call “hand-offs,” which occur when a person moves while on a call, and the call switches to routing through the next tower (or a different-face of the same tower) as the individual gets closer to it. App. 3497a. At trial, the Government’s expert was able to use hand-offs during a defendant’s 52-sec-ond call to describe the CSLI as “consistent with southbound movement on 1-278” from New York to northern New Jersey. App. 3499a-3500a. Tracking an individual through space during the course of a call represents more data to aggregate—and a correspondingly greater privacy intrusion—than simply collecting his or her location only at the origination and termination of a call.
The application also reflects the Government’s capability to obtain data from use of a cell phone that it could not typically have obtained from an individual’s use of a telephone, which the Riley Court regarded as a reason to require warrants for cell phone searches. Riley, 134 S.Ct. at 2489. Here, the Government requested location information for text messages, as well. Indeed, the Government’s request to AT & T may.stretch even more broadly than calls and texts—asking for data about each time a tower “received a radio signal,” App. 459, from a phone could conceivably encompass any time any application on a phone, even one running passively in the background, connects to the network. In re Application for Telephone Information Needed for a Criminal Investigation, 119 F.Supp.3d 1011, 1024 (N.D. Cal. 2015) (affirming a magistrate judge’s denial of an application for CSLI under § 2703(d)); CSLI may be generated by an action as innocuous as a user’s email application passively checking for mail in the background without an active request that it do so by the user. Id. Collecting data at every radio signal— whether the origin or termination of a call, a call hand-off, a text message, or a data connection by an application—threatens an individual’s reasonable expectation of privacy more than collecting data at the origination and termination of calls only.
For all of the foregoing reasons, I believe that the Government obtaining the quantity of historical CSLI it did in this case amounts to a search that, without a warrant, infringes on an individual’s reasonable expectation of privacy and violates the Fourth Amendment.
II
All of this said, I would not suppress the CSLI evidence in this case because of the good faith exception to the warrant requirement. “Searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule.” United States v. Katzin, 769 F.3d 163, 172-73 (3d Cir. 2014) (en banc) (quoting Davis v. United States, 564 U.S. 229, 231, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011)).[4] In re Application amounted *280 to binding Circuit precedent that “specifically .authorized the] particular police practice” at issue here. Davis, 564 U.S. at 241, 131 S.Ct. 2419. As such, the CSLI in this case need not have been excluded, and I concur with the Opinion of the Court as to the judgment on this issue.
Ill
Despite applying the good faith exception to the warrant requirement in this instance, I believe that obtaining historical CSLI that approaches GPS-level precision, aggregated over at least the four week period the Jones shadow majority rejected—as in this case—should require a warrant supported by probable cause rather than a § 2703(d) order supported by rear sonable suspicion. “Our cases have historically recognized that the warrant requirement is an important working part of our machinery of .government, not merely an inconvenience to be somehow weighed against the claims of police efficiency.” Riley, 134 S.Ct. at 2493 (internal quotation marks omitted). Especially where “[r]ecent technological advances ... have .,. made the process of obtaining a warrant itself more efficient,” we need not sanction the rapid pace and expansive scope of technological change eroding important constitutional protections that we have enjoyed for centuries, Id. “The [Fourth] Amendment and the common law from which it was constructed leave ample room, for law enforcement to do its job. A, warrant .will always do.” U.S. v. Carloss, 818 F.3d 988, 1015 (10th Cir. 2016) (Gorsuch, J., dissenting).
For all of the foregoing reasons, I concur only as to the judgment in parts III(A)(2)-(3) of the Opinion of the Court.

. See, e.g., In the Matter of the Application of the United States of America for an Order Authorizing Disclosure of Historical Cell Site Information for Telephone Number [Redacted], 40 F.Supp.3d 89, 92 (D.D.C. 2014) (rejecting a § 2703(d) application absent a showing of probable cause or more evidence about CSLI, because of "serious questions about whether the Fourth Amendment requires a warrant to obtain CSLI” in light of Jones).

. Although the lead opinion in Jones resolved the case on the basis of physical trespass, it addressed the concurrences’ position that the trespass theory provided insufficient protection of an individual’s reasonable expectation of privacy by acknowledging that "[ijt'may be that achieving the same result through electronic means, without an accompanying trespass, is an unconstitutional invasion of privacy.” Jones, 565 U.S. at 412, 132 S.Ct. 945.

,‘ Because wé consider the case on the facts before us, we consider- CSLI as precise as it is in urban areas. It may be that the less precise CSLI in rural areas is so dissimilar from GPS location data as to 'make' Jones inapplicable, but we need not .consider that question.

. The Opinion of the Court and the dissents in Katzin disagree as to how directly a prior case must authorize particular law enforcement conduct to amount to "binding appellate *280 precedent” on which law enforcement officers could rely. Compare Katzin, 769 F.3d at 174, with id. at 192-93 (Greenaway, Jr., J„ dissenting), This case presents no such question of directness. The Katzin dissents also pointed out that limiting the application of the exclusionary rule might lead to more occasions of law enforcement officers conducting searches not sanctioned by judges. See id. at 189-90 (Greenaway, Jr., J,, dissenting). Here, agents still sought out the imprimatur of a neutral magistrate judge for the search (albeit under a lesser-standard than probable cause),