JORDAN, Circuit Judge,
dissenting.
The majority concludes that “because a Pennsylvania terroristic threats offense requires a minimum mens rea of recklessness rather than intent, it is not a crime of violence for purposes of 2L1.2.” (Maj. Op. at 5.) In my view, however, the possibility that the statute can be violated by recklessness does not mean that the state cannot charge and convict someone of intentional acts that violate the statute. Because I believe that the criminal complaint underlying Johnson’s terroristic threats conviction unmistakably reveals that he was charged and convicted with committing that crime intentionally, I would affirm the District Court’s conclusion that the conviction constitutes a crime of violence under § 2L1.2, and I respectfully dissent.
Johnson’s conviction stems from an altercation in which he threatened to kill another person. According to the criminal complaint associated with that incident, Johnson “approach[ed] the complainant ... and threatened] to kill her.” (App. at 86.) He then brandished “a beer bottle at her, [struck] her on the hand[,]” and “again threatened] to kill her....” (Id.) He was convicted of terroristic threats under 18 Pa. Cons.Stat. Ann. § 2706 on June 24,1996.
A conviction qualifies as a crime of violence under § 2L1.2 if it satisfies two criteria. First, the defendant must have committed the crime with an intentional mens rea. United States v. Otero, 502 F.3d 331, 335 (3d Cir.2007). Second, the crime must be either expressly enumerated in the notes to § 2L1.2, or it must have “as an element the use, attempted use, or threatened use of physical force against the person of another.” U.S. Sentencing Guidelines Manual § 2L1.2 cmt. l(B)(iii) (2008)[hereinafter U.S.S.G.]. Because the crime of terroristic threats is not specifically mentioned in the notes to § 2L1.2, Johnson’s prior conviction can be a crime of violence only if it satisfies the latter alternative. I will address mens rea before turning to the definition of “crime of violence” in the Guidelines.
A. Mens Rea
The majority concludes that Johnson’s terroristic threats conviction does not qualify as a crime of violence because, by definition, a terroristic threats conviction may rest upon either the “intent to terrorize another or ... reckless disregard” toward the risk of doing so. 18 Pa. Cons. Stat. Ann. § 2706. A crime of violence requires an intentional mental state, and, the majority reasons, we cannot identify the mens rea Johnson harbored because the criminal complaint in the underlying case does not specify his mental state. I disagree that we cannot discern Johnson’s mental state from that complaint.
To determine whether a prior conviction satisfies the requirements of a sentencing enhancement, we ordinarily employ an analytical method known as the categorical approach. Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); see also United States v. Johnson, 587 F.3d 203, 208 (3d Cir.2009). Following that approach, we do not look at the facts of the case at all but instead evaluate the legal elements of the prior offense and determine whether they satisfy the requirements of the enhancement. Taylor, 495 U.S. at 600, 110 S.Ct. 2143. However, “[w]here a statute criminalizes different kinds of conduct, some of which would constitute crimes of violence while others would not,” Johnson, 587 F.3d at 208, we *209 turn from a strict categorical approach to what is called a “modified categorical approach” wherein we may examine “the nature of the conviction itself and those elements that the [fact-finder] necessarily found through an examination of judicial record evidence.” Nijhawan v. Att’y Gen. of U.S., 523 F.3d 387, 393 (3d Cir.2008). In undertaking that examination, we may consider “the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or ... some comparable judicial record of this information.” Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). The modified categorical approach can only be used to identify those facts that form the essential basis of the defendant’s conviction; it does not permit delving into facts that were not necessary to establish the crime for which the defendant was ultimately convicted. Johnson, 587 F.3d at 208.
I believe that the modified categorical approach may be appropriately applied to this case to determine whether Johnson communicated a threat with the intent to terrorize the victim or merely with reckless disregard toward her safety.[1] See id. at 212-14 (recognizing that a Pennsylvania *210 simple assault may be predicated upon either intentional or reckless conduct and remanding to the district court to identify the mental state with which the defendant acted). As earlier noted, the criminal complaint from Johnson’s state court proceedings reflects that he accosted the victim and threatened to kill her. He then brandished “a beer bottle at her, [struck] her on the hand[,]” and “again threatened] to kill her....” (App. at 86.) As the majority notes, the complaint does not specify a particular mens rea with which Johnson acted, reciting only the statutory prerequisite that he acted “knowingly or intentionally or recklessly.” (Id.) However, it seems abundantly clear that the utterance of a death threat and the physical gestures and contact that accompanied it were not merely reckless accidents. They were intentional acts and are the only acts speeified as constituting the crime. Thus, I would apply the modified categorical approach to identify the mens rea supporting Johnson’s convictions, and, based on the criminal complaint, would agree with the District Court that he acted in an intentional manner when he violated § 2706.[2]
B. Threatened Use of Force Against Another
Notwithstanding an intentional mens rea, Johnson’s terroristic threats conviction qualifies as a crime of violence under § 2L1.2 only if the threatened use of force against the person of another was an essential element of his offense. U.S.S.G. § 2L1.2 cmt. l(B)(iii). We must therefore identify the elements of the crime of terroristic threats to determine whether the crime entailed a risk of force against another person.
*211 At the time of Johnson’s conviction, 18 Pa. Cons.Stat. § 2706 criminalized “threaten[ing] to commit any crime of violence with intent to terrorize another or to cause evacuation of a building ... or otherwise to cause serious public inconvenience....” Pennsylvania courts have recognized that the phrase “crime of violence,” as used in § 2706, encompasses conduct, such as threatening to commit homicide, that endangers the physical safety of another person. See Commonwealth v. Ferrer, 283 Pa.Super. 21, 423 A.2d 423, 424 (1980) (concluding that a threat to commit murder qualifies as a threat to commit a crime of violence for purposes of § 2706). However, the statute also reaches conduct, such as threatening arson, that endangers another’s property but does not necessarily place a person’s physical safety at risk. See Commonwealth v. Cancilla, 437 Pa.Super. 317, 649 A.2d 991, 992-93 (1994) (construing arson as a “crime of violence” for purposes of § 2706). Hence, some convictions for terroristic threats concern threats of physical force against another person, placing the conviction within § 2L1.2, while other convictions do not. In other words, the phrase “crime of violence” has a broader meaning under § 2706 than under § 2L1.2, so that a threat to commit a “crime of violence” as that phrase is used in § 2706 may — but does not necessarily— qualify as a crime of violence for purposes of § 2L1.2.
Faced with a predicate offense that sometimes qualifies as a § 2L1.2 crime of violence, I would again apply the modified categorical approach and look to the judicial record of Johnson’s state proceedings for the purpose of “determining the elements necessarily found by [the fact-finder], or admitted by the defendant in pleading guilty.” Evanson v. Att’y Gen. of U.S., 550 F.3d 284, 290 n. 4 (3d Cir.2008).[3] The criminal complaint that led to Johnson’s Pennsylvania conviction indicates that he *212 struck the victim and threatened her life. Neither the charging instrument nor the court’s verdict form reveals any threat against property. Thus, the record of Johnson’s state case unequivocally establishes that he was convicted under § 2706 based on a factual finding beyond a reasonable doubt that he threatened the safety of another person.[4] That threat forms an essential element of his conviction. Therefore, I would hold that Johnson’s conviction rests upon a threat that endangered the safety of a person rather than property.
Accordingly, I would conclude that the modified categorical approach has two applications in Johnson’s case. First, I would apply it to identify the mens rea with which Johnson violated the terroristic threats statute. That assessment reveals that he acted with an intentional mental state. Second, I would apply the approach to the phrase “crime of violence,” as used in § 2706, and would find that Johnson committed the crime of terroristic threats by communicating a threat against the person of another. Using this approach, his crime is revealed to have “as an element the use, attempted use, or threatened use of physical force against the person of another.” U.S.S.G. § 2L1.2 cmt. l(B)(iii). I thus believe that the District Court was correct in looking to the criminal complaint to enhance Johnson’s sentence under § 2L1.2, and I would affirm the sentence the Court imposed.

. The majority, relying upon our decision in Otero, suggests that a prior conviction cannot qualify as a crime of violence if it rests upon a statute that criminalizes multiple forms of mens rea and only some of those mental states would support the enhancement. That is a faithful reading of Otero, in which we held that a conviction for simple assault under Pennsylvania law did not qualify as a crime of violence under § 2L1.2 because the Pennsylvania simple assault statute requires merely a finding of recklessness. 502 F.3d at 335 (citing Popal v. Gonzales, 416 F.3d 249, 254 (3d Cir.2005) ("Because Pennsylvania simple assault requires a mens rea of recklessness, rather than intent, it is not a crime of violence. ...”)). However, I believe that we can and should revisit our holding in Otero in light of the Supreme Court’s intervening decision in Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008). See In re Krebs, 527 F.3d 82, 84 (3d Cir.2008) ("A panel of this Court may reevaluate the holding of a prior panel which conflicts with intervening Supreme Court precedent.”).
In Begay, the Supreme Court provided guidance for applying sentencing enhancements under the Armed Career Criminal Act ("ACCA”), which increases a sentence based on an enumerated list of prior crimes as well as on any crime that "presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B)(ii). The Court held that, before enhancing a sentence for a non-enumerated crime, a court must ensure that the prior crime poses a risk commensurate with other crimes enumerated in the Act. Begay, 128 S.Ct. at 1584-85. The Court further explained that the defendant must have committed that crime with a purposeful mens rea. Id. at 1586-88. A conviction based upon reckless conduct cannot support such an enhancement. Id. at 1587 (observing that Congress generally predicates sentencing enhancements upon intentional conduct because an intentional mens rea “show[s] an increased likelihood that the offender is the kind of person who might" engage in other forms of criminal activity).
In Johnson, 587 F.3d at 208, we interpreted Begay to invite inquiry into the underlying record when a prior conviction could potentially rest on either an intentional or a reckless mens rea. lohnson required us to consider whether the Pennsylvania simple assault statute, the same statute at issue in Otero, qualified as a crime of violence for purposes of the career-offender provisions of the Guidelines. We first compared simple assault with other crimes enumerated in the career-offender provisions, which include burglary, arson, extortion, and any crime that involves a threat against another person. We found that simple assault poses a risk akin to those crimes. Id. at 211. We then held that, after Begay, it is appropriate to look to the record of the underlying case to determine whether a defendant was convicted of simple assault based on intentional conduct. Id. at 212 (holding that "an intentional or knowing violation of the [Pennsylvania simple assault statute] is a crime of violence” for purposes of the career-offender provisions of the Guidelines.).
In my view, Begay and Johnson overcome Otero's hesitancy to look to the underlying *210 record for the purpose of identifying a defendant’s mens rea. Applying Begay and Johnson to the instant matter, I believe it is appropriate to look to the criminal complaint to identify the mens rea with which defendant Johnson acted. For the reasons described below, I would find that he acted in an intentional manner. Thus, unlike my colleagues, I do not believe that Otero continues to limit our ability to assess the criminal complaint to identify the mens rea with which Johnson acted.

. The fundamental disagreement between the majority’s view and mine is captured in the majority's statement that, ‘‘to the extent we can look at the ... [criminal complaint], it is only to determine with which mens rea Johnson was charged and convicted under the statute.... We cannot take the next step the dissent advocates, which is to consider Johnson's actual conduct to determine with which mens rea he acted on the particular occasion.” (Maj. Op. at n. 2.) I have been unable to persuade my colleagues that my analysis of this case is not an impermissible second step, that it is instead focused on the first analytical step outlined in the quoted statement. Contrary to the misimpression that I have evidently left, my concern is not grounded in idle curiosity about the behavior Johnson exhibited. I view this case as presenting a circumstance in which one of the crucial questions is indeed which mens rea is implicated by Johnson’s charge and conviction, and I believe the District Court rightly looked to the criminal complaint to discern the answer to that question. To recap, the terroristic threats statute is broad enough to cover both reckless and intentional threats. Again, ”[w]here a statute criminalizes different kinds of conduct, some of which would constitute crimes of violence while others would not, the court must apply a modified categorical approach ... to determine the particular part of the statute under which the defendant was actually convicted.” Stinson, 592 F.3d at 462. Thus, for me at least, the question becomes whether we can discern from the charging document whether the state was prosecuting Johnson for a reckless or an intentional threat, and the answer is we can. It charged and convicted him of making an intentional threat. The unfortunate insertion of boilerplate language from the statute including the word “recklessly” along with "intentionally” created an ambiguity that evaporates in light of the statements in the charging document itself describing Johnson’s culpability. Shepard tells us we can look at the charging document to determine which part of the statute the defendant violated, 544 U.S. at 26, 125 S.Ct. 1254, and, like the District Court, I would do so.

. Johnson argues that the modified categorical approach is unhelpful because § 2706 does not distinguish threats that imperil personal safety from those that place property at risk. He suggests that § 2706’s lack of disjunctive phrasing separating the types of threats (i.e., threats to people versus threats to property) makes inquiry into the facts improper because a terroristic threats conviction cannot categorically trigger an enhancement under § 2L1.2. I disagree. Application of the modified categorical approach is not driven by the "typography used by the statute’s drafters,” Singh v. Ashcroft, 383 F.3d 144, 163 (3d Cir.2004), but by inquiry into whether the statute is "disjunctive in a meaningful way,” Evanson, 550 F.3d at 292 n. 5. Certainly, most statutes to which the modified categorical approach applies contain disjunctive grammar; however, in some cases a statute may be conceptually disjunctive even though its authors chose not to use the word or when drafting it. Thus, the Fourth Circuit has applied the modified categorical approach to a conviction for common law assault because, although the elements of the offense were not phrased disjunctively, the offense could be committed in various ways, only some of which triggered a sentencing enhancement. See United States v. Coleman, 158 F.3d 199, 202 (4th Cir.1998) (looking to the underlying offense conduct to determine whether a common law assault qualified as a violent felony even though the elements of the former crime are not phrased disjunctively), cited with approval in United States v. Shabazz, 233 F.3d 730, 732 (3d Cir.2000). The First Circuit has likewise applied the modified categorical approach to determine whether a defendant’s conviction under the Massachusetts assault and battery statute qualified as a violent felony for federal sentencing purposes because the statute, while not phrased in the disjunctive, had been judicially interpreted to encompass both violent and non-violent conduct. See United States v. Harris, 964 F.2d 1234, 1235-37 (1st Cir.1992), overruled on other grounds by Shepard, 544 U.S. 13, 125 S.Ct. 1254.
The present case is analogous to those precedents. Section 2706, as it has been interpreted by Pennsylvania courts, criminalizes any threat to commit a crime of violence against a person or to commit a crime of violence against property. This distinction is *212 implicit in the statute, and it is no less significant because it is unspoken than if it had expressly appeared in the statutory text. The modified categorical approach should apply to such a scenario because statutory construction reveals that a crime may be committed in multiple ways, only some of which trigger an enhancement. Cf. Nijhawan, 523 F.3d at 393 (stating that the modified categorical approach typically "involve[s] ‘divisible’ statutes, where the prior criminal offense, by statute, includes a wide range of activity but the requisite enhancing provision ... requires one or more particular elements that may or may not have been found as part of the conviction”). I would therefore look to the facts of the underlying conviction to determine whether the defendant violated the statute in a manner that qualifies for the enhancement. Thus, I believe it would be proper to rely upon the charging instrument in Johnson's state criminal case to determine whether his terroristic threats conviction implicates the sentencing enhancement set forth in § 2L1.2.

. That this information can be gained from the criminal complaint distinguishes this case from United States v. Ortiz-Gomez, 562 F.3d 683 (5th Cir.2009). In that case, the Fifth Circuit held that the making of terroristic threats under § 2706 did not qualify as a crime of violence under § 2L1.2. Id. at 687. However, in that case, it was unclear whether the defendant had threatened the safety of another person or threatened a property-based offense. Id. at 685. Thus, the underlying record was insufficient to enable the court to determine whether the fact-finder had convicted the defendant based on a threat against personal safety as required by § 2L1.2. By contrast, the charging document in Johnson’s case indicates that he threatened to Mil another person. Application of the enhancement is appropriate under the modified categorical approach because the underlying record establishes that an intentional threat against another person’s safety was an essential element of Johnson’s conviction for terroristic threats.